## COMMONWEALTH v. EQUITABLE BENEFICIAL ASSOCIATION.

### APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF DAUPHIN COUNTY.

Argued January 6, 1890—Decided February 3, 1890.

[To be reported.]

1. A contract of insurance is purely a business adventure, not founded on any philanthropic, benevolent or charitable principle; and the design and purpose of an insurance company, and the dominant and characteristic feature of its contract, is the granting of an indemnity, or security against loss, for a stipulated consideration.

2. But the design of what are known as benevolent societies, which are purely of a philanthropic or benevolent character, is, not to indemnify, or secure against loss, but, from the contributions of members, to accumulate a fund to be used in their own aid or relief, in the misfortunes of sickness, injury or death.

   (a) An association, incorporated as a beneficial society under the act of April 29, 1874, P. L. 73, being called upon by quo warranto to show by what authority it exercised the franchise of making insurance contracts, the issue, joined upon a plea denying such exercise, was tried without a jury under the act of April 22, 1874, P. L. 109:

3. The decision of the court, in such case, not stating separately and distinctly the findings of fact from which the conclusion that the defendant had engaged in the making of insurance contracts was drawn, as required by § 2 of said act of 1874, but referring to the facts found in another and like cause, the judgment of ouster entered was reversed.

Before Paxson, C. J., Sterrett, Green, Clark, Williams, McCollum and Mitchell, JJ.

No. 40 May Term 1889, Sup. Ct.; court below, No. 32 January Term 1889, C. P.

Decision of Court below.

On September 28, 1888, upon suggestion of the attorney general filed, the court below awarded a writ of quo warranto against the Equitable Beneficial Association of Pennsylvania, requiring the defendant to appear and show by what authority it claimed to have and use the franchises, liberties and privileges of being "a body politic and corporate by the name of the Equitable Beneficial Association of Pennsylvania, to make contracts of in - surance, and to issue policies of insurance in pursuance thereof."

In answer to the writ, the defendant corporation filed pleas, in substance as follows : (1) averring that the warrant and authority of the defendant for the exercise of the franchises of a body corporate, was derived from a charter of incorporation, set out in extenso in the plea; and (2) denying that the defendant had made contracts of insurance and issued policies of insurance, as alleged in the suggestion of the attorney general.

The charter of incorporation, set out in the first plea, was granted by the Court of Common Pleas No. 2 of Philadelphia county, on November 19, 1884, under the act of April 29, 1874, P. L. 73, and its supplements, and was duly recorded in the office of the recorder of deeds of Philadelphia county on November 22, 1884. The character and objects of the corporation were stated in the certificate of incorporation to be " for beneficial purposes, to aid its members in times of sickness or injury by the payment of weekly or monthly benefits, or to the widows, heirs or assigns of members, in case of death, or for funeral expenses, or to revert to said members at a more advanced age, by collecting funds either by weekly, monthly, or quarterly dues from the members ; and for these purposes, to have, possess and enjoy all the rights, benefits and privileges, of the said act of assembly and the supplements thereto."

Issue being joined, the cause by agreement of the parties was tried by the court, SIMONTON, P. J., without a jury, under the act of April 22, 1874, P. L. 109, on December 18, 1888, and on February 12, 1889, the following decision was filed:

This is a proceeding in which the attorney general has obtained a writ of quo warranto against the corporation defendant, calling upon it to show by what authority it claims or exercises the right to issue policies of insurance. Defendant, in its answer, denies that it has issued policies of insurance or that it

Decision of Court below.

claims the right so to do; and the question in the case is whether it has been issuing such policies, and has therefore been doing an insurance business. It is in effect conceded that its charter, which was granted by the Court of Common Pleas of Philadelphia, under paragraph IX. of the act of April 29, 1874, P. L. 73, does not authorize it to do an insurance business.

The object of the association, as stated in its charter, is [as quoted above].

The facts of the case are substantially the same as in the case of the Commonwealth v. Mutual Aid Union and Beneficial Association of Philadelphia, No. 36 January Term 1889, Dauphin County Common Pleas, in which an opinion has this day been filed,* and for the reasons in said opinion given, we find, as

---

*The decision referred to above, filed to No. 36 January Term 1889, C. P., in the case of the Commonwealth v. Mut. Aid Union and Benef. Ass'n, was printed in the latter part of the appendix to the defendant's paper-book, *but not thus brought upon the record,* and was as follows:

This is a proceeding in which the attorney general has obtained a writ of quo warranto against the corporation defendant, calling upon it to show by what authority it claims or exercises the right to issue policies of insurance. Defendant, in its answer, denies that it has issued policies of insurance, or that it claims the right so to do; and the question in the case is whether it has been issuing such policies, and has therefore been doing an insurance business. It is in effect conceded that its charter, which was granted by the Court of Common Pleas of Philadelphia, under paragraph IX., of the act of April 29, 1874, P. L. 73, does not authorize it to do an insurance business.

The object of the association, as stated in its charter, is "for the purpose of collecting and accumulating a fund by admission fees, monthly dues and assessments, in order to benefit and aid its members in the event of their marriage, and to benefit and aid the widow or widowers and children of deceased members."

The evidence shows that it never has undertaken to confer any benefits upon the condition or contingency of marriage, and that, although by its by-laws it purports to receive members of an age not greater than six years, it has not, in fact, received any under fifteen years of age.

It has been engaged in business about ten years, and, during that time, it has collected from its members, for dues and assessments about $66,000, and paid out, for what are called sick and death benefits, $34,000; while its expenses during the same time have amounted to over $40,000.

Its board of directors consists of five members, and they have the power, by the by-laws, to elect their own successors; and the general officers and managers "cannot be removed except for just cause, and a four fifths vote of all of the directors."

Decision of Court below.

matter of law, that the commonwealth is entitled to a judgment of ouster against this defendant.    We do not think the evidence

---

The evidence shows that, claiming to act under its charter, the company has made thousands of contracts by which it has agreed in consideration of the payment of specified sums monthly, " within seven days after the date when they become due " respectively, and upon condition that " in default of paying regularly the said monthly dues at the time or times they become due, or within seven days thereafter, the moneys previously paid shall be forfeited for the benefit of the association " and the person so in default " shall cease to be entitled to any benefits," that it will pay a specified sum every week for a limited period in case of sickness, or a definite sum in the event of the death of the member, payable to the person named in the contract as beneficiary.    The contracts are embodied in a formal application and a certificate of membership.    The defendant does not employ agents except to collect dues and assessments.

We find no warrant in the charter of defendant for the business carried on by it.    It is practically a life insurance business, such as its charter does not authorize it to transact, and such as the courts have no jurisdiction to authorize.    The sums paid monthly by the members or beneficiaries are, as well as the assessments, paid on the footing of a contract, and must be continued indefinitely, under penalty of forfeiture of amounts already paid.

It is argued that by § 54, of the insurance act of May 1, 1876, P. L. 67, beneficial associations, of which defendant is one, are excepted from the provisions of the act, and that, therefore, they have the right to transact the business which they have been carrying on.    We do not think that the conclusion necessarily follows from the premise.    If the act of May 1, 1876, does not apply to defendant, the result is simply that it is not brought within the jurisdiction of the insurance commissioner.    But this does not aid, in any degree, in determining its power under its charter; and what these powers are, or, at least, whether they include the right to transact the business in which they are engaged, is the real question in this case. Those rights cannot be increased by § 54 of the insurance act.    That section does not enlarge the jurisdiction to grant charters, conferred on the courts by the act of 1874.    That act limits the jurisdiction to corporations not for profit, and the only clause, under which defendant could claim to be chartered, is that which authorizes the granting of charters for the purpose of " the maintenance of a society for beneficial or protective purposes to its members from funds collected therein."    It would be doing violence to the language of this clause to extend it so as under it to confer the right to transact what is, in all its essential features, the business of life insurance, differing only from the business transacted by the various life insurance companies in the amounts for which policies are issued.    Thus, the operations of this defendant would be correctly described by using the language of § 28, of the act of 1874, authorizing corporations for profit to be chartered by the governor, which is as follows: " Companies incorporated under the provisions of this act for the insurance of human beings against sick-

Decision of Court below.

shows any wilful intent on the part of the officers of the defendant association to violate the law, or to usurp powers not conferred by the charter; and we therefore think that the judgment to be entered must be so framed as to preserve to defendant whatever rights are really conferred upon it by its charter. The form of judgment will therefore be settled on proper application to the court.

On April 19, 1889, exceptions to the decision, filed by the defendant, were overruled, and subsequently judgment was entered as of February 12, 1889, "that the defendant, the Equitable Beneficial Association of Pennsylvania, has, without authority of law, usurped the franchise of making contracts of insurance and issuing policies pursuant thereof; and it is further adjudged that the defendant, the Equitable Beneficial Association of Pennsylvania, be ousted and altogether excluded

---

ness, death or personal injury, . . . . shall have the power and right to make, execute and perfect such and so many contracts, agreements, policies, and other instruments as may be required therefor." This language describes exactly that which defendant has been and is engaged in doing, and it is impossible for us to say that the business thus described is not the business of life insurance.

We may further say that it is very doubtful whether the business, which has been done by this defendant, has, in any proper sense, been beneficial to its members. An analysis of the receipts and expenditures of the association, above stated, will show that they have paid out, on an average, annually, $4,000 for expenses, and only $3,400 for benefits; showing that more than fifty per cent of the amount collected from the members is absorbed in expenses, and consequently, less than one half the amount paid in by the members is ever returned in the form of benefits.

We are forced to the conclusion, as a matter of law, that this defendant is unlawfully, and without warrant in its charter, engaged in the business of issuing policies of life insurance, and that, therefore, the commonwealth is entitled to judgment of ouster. We do not think the evidence shows any wilful intent on the part of the officers of the defendant association to violate the law, or to usurp powers not conferred by the charter, and we therefore think that the judgment to be entered must be so framed as to preserve the defendant whatever rights are really conferred upon it by its charter. The form of the judgment will therefore be settled on proper application to the court.

—It might be observed that in these cases, the "Application for Membership," and "Certificate of Membership," presented as exhibits, seemed to differ very little in substance from the usual applications and policies issued in ordinary insurance.

Arguments.

from the exercise of the said franchise of making contracts of insurance and issuing policies of insurance in pursuance thereof, and that the plaintiff, the commonwealth of Pennsylvania, have and recover of the defendant the costs of this proceeding." ·

Thereupon, the defendant took this appeal, filing the following assignment of error :

1. The learned court below erred in overruling the exceptions of defendant below, and entering judgment of ouster for the commonwealth :

(*a*) In not finding the facts as required by the act of April 22, 1874; and in not specially finding as the facts, those agreed upon as the facts, and submitted to the court by the parties.

(*b*) The learned court below erred in finding as a matter of law "that the commonwealth is entitled to a judgment of ouster" against appellant.

*Mr. John Walker Shortlidge,* for the appellant:

1. The decision of the court does not conform to the requirements of the act of April 22, 1874, P. L. 109.    It is not a compliance with that act to say that the facts which the act directs to be found separately and distinctly in writing, are substantially the same as those found in some other case.    The record of the case must contain a distinct and separate finding of the facts: Lewars v. Weaver, 121 Pa. 286; Harris v. Hay, 111 Pa. 565; Sweigard v. Wilson, 106 Pa. 213; Marr v. Marr, 103 Pa. 468; Butterfield v. Lathrop, 71 Pa. 229.

2. The primary question in the case is to determine what a beneficial association is, and whether the defendant association, as chartered and carried on, is such.    Three reasons seemed to incline the court below to the opinion that the defendant's operations were not to be distinguished from life insurance, viz.:
(*a*) that it employs paid agents; (*b*) that a relation, in the nature of a contract, exists between it and its members, and (*c*) that it uses certain printed blanks in its business, somewhat similar to those used by insurance companies.

3. The corporation was expressly authorized by the act of April 29, 1874, to employ and compensate agents.    And at the time that act was passed the term, beneficial association, had a settled and defined meaning, presumably known to the legislature, which embraced associations conducted in the same

manner as this one: Swift v. Beneficial Soc., 73 Pa. 363.
Moreover, § 54, act of May 1, 1876, P. L. 67, in excepting
from the regulations enacted for insurance companies benefi-
cial associations, whether "issuing policies" or not, plainly
recognizes the definition of the term given in the case cited:
See also Commonwealth v. Aid Ass'n, 94 Pa. 488.

*Mr. John F. Sanderson*, Deputy Attorney General, (with
him *Mr. William S. Kirkpatrick*, Attorney General,) for the
appellee :

The evidence before the court below showed that by the
contracts which the defendant makes with its members, the
former engages, in consideration, inter alia, of the payment
of certain weekly dues, to pay to the member, or other person
legally entitled to receive the same, upon receipt of satisfactory
proof of the member's sickness or death, the sum of money
stipulated in a certain schedule, as weekly sick benefit or as
death benefit.   Such a contract is one of life insurance as de-
fined in Commonwealth v. Wetherbee, 105 Mass. 149.   The
association considered in Commonwealth v. Aid Ass'n, 94 Pa.
481, did not engage to pay a fixed sum on the death of the
member.   The defendant does so, and issues a contract to that
effect, enforceable by law.   Such contracts are unauthorized
by its charter.   If the act of May 1, 1876, does not apply to
the defendant, the result is simply that it is not within the
jurisdiction of the insurance commissioner.   The excepting sec-
tion of that act cannot enlarge the defendant's charter rights.

OPINION, MR. JUSTICE CLARK:

This writ of quo warranto issued out of the Common Pleas
of Dauphin county, upon the suggestion of the attorney general,
against what is known as the Equitable Beneficial Association
of Pennsylvania, commanding the said association to appear
and show by what authority they were exercising the fran-
chises, rights, and privileges of a body politic and corporate, by
the name stated, and in that name making contracts and issu-
ing policies of insurance.   In response to the writ, the associa-
tion sets forth that their warrant and authority is derived from
a charter of incorporation, which they hold under the decree of
the Court of Common Pleas No. 2, of Philadelphia, bearing

date November 19, 1884, and recorded in the office for the recording of deeds, etc., in and for the city and county of Philadelphia, in Charter Book No. 9, p. 484, etc., on November 22, 1884, according to law; that the said charter was granted pursuant to the provisions of the act of assembly of April 29, 1874; that the character and objects of the association, as set forth in their charter, are, by the accumulation of a fund from weekly, monthly, or quarterly dues, or contributions from its members, to aid and protect them in time of sickness or injury, by payment of "benefits," either to the members directly in their lifetime, or to the widows, heirs, or assigns of members, in case of death, for funeral or other purposes, or, otherwise, the said fund to revert to the members at an advanced age.   Their contention is that their organization falls within the first class of corporations, authorized by the second section of the act of 1874, which, in the ninth clause, provides for the granting of charters for the maintenance of societies "for beneficial or protective purposes to its members from funds collected therein;" and that the Equitable Beneficial Association of Pennsylvania is in no sense an insurance company, and has not been, and is not now, so conducted.

As the law plainly recognizes the existence of beneficial societies, as distinguished from insurance companies, and provides for their incorporation as such, it is proper that we should determine what is meant by " a society for beneficial or protective purposes," and in what respects it may be said to differ from an insurance company.   The general object or purpose of an insurance company is to afford indemnity or security against loss: its engagement is not founded in any philanthropic, benevolent, or charitable principle; it is a purely business adventure, in which one, for a stipulated consideration or premium per cent, engages to make up, wholly or in part, or in a certain agreed amount, any specific loss which another may sustain; and it may apply to loss of property, to personal injury, or to loss of life.   To grant indemnity or security against loss, for a consideration, is not only the design and purpose of an insurance company, but is also the dominant and characteristic feature of the contract of insurance.

What is known as a beneficial association, however, has a wholly different object and purpose in view.   The great under-

Opinion of the Court.

lying purpose of the organization is not to indemnify or to secure against loss : its design is to accumulate a fund from the contributions of its members, "for beneficial or protective purposes," to be used in their own aid or relief, in the misfortunes of sickness, injury, or death. The benefits, although secured by contract, and for that reason to a limited extent assimilated to the proceeds of insurance, are not so considered. Such societies are rather of a philanthropic or benevolent character : their beneficial features may be of a narrow or restricted character ; the motives of the members may be to some extent selfish, but the principle upon which they rest is founded in the considerations mentioned. These benefits, by the rule of their organization, are payable to their own unfortunate, out of funds which the members have themselves contributed for the purpose, not as an indemnity, or security against loss, but as a protective relief in case of sickness or injury, or to provide the means of a decent burial in the event of death. Such societies have no capital stock. They yield no profit, and their contracts, although beneficial and protective, altogether exclude the idea of insurance, or of indemnity, or of security against loss. There were many of these societies in existence at the time of the passage of the act of 1874 in this state : the character of their business was a matter of common knowledge, and it was doubtless to societies of this character the ninth clause of the second section of the act of 1874 was intended to apply.

But we are wholly in the dark as to the nature of the business conducted by these defendants. The cause was tried under the act of April 22, 1874, without a jury, and the facts necessary to the determination of the case are not found. It is the duty of the court, in such case, to "state separately and distinctly the facts found, the answers to any points submitted in writing by counsel, and the conclusions of law:" Act of April 22, 1874, P. L. 109; Marr v. Marr, 103 Pa. 468; Sweigard v. Wilson, 106 Pa. 213; Harris v. Hay, 111 Pa. 564. In the opinion of the court, after reciting the purpose or design of the association, as defined by the charter, the learned court says : "The facts in the case are substantially the same as in the case of the Commonwealth v. Beneficial Association of Philadelphia, No. 36 January Term 1889, Dauphin county

Common Pleas, in which an opinion has this day been filed; and for the reasons in the said opinion given, we find, as matter of law, that the commonwealth is entitled to a judgment of ouster against this defendant." What these facts were the record does not show, and it is impossible for us to examine into the correctness of the conclusion of law without the facts from which that conclusion is drawn. In a case of this kind we are confined to the record. What is not found, must be presumed not to exist. We are wholly without information as to the business in which the defendants are engaged: there is no finding that they are making any contracts of insurance, or issuing policies in pursuance thereof; or, indeed, that they are engaged in any business at all.

> The judgment is reversed, and a procedendo awarded.